UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


JAY HARRISON MORNINGSTAR,

      Plaintiff,

v.

CITY OF DETROIT, DETROIT POLICE
DEPARTMENT, KYM L. WORTHY,      Case No. 06-11073
Wayne County Prosecutor, DEBORAH
ROBINSON, Detroit Police Department      Honorable Patrick J. Duggan
Deputy Chief, JAMES TOLBERT, GLENN
DAVIS, KENNETH GARDNER,
TAWNYA KING, CHARLES ZWICKER,
TYRINE WHEATLY, AND LISA
BRYSON (MIX), Detroit Police Department
Officers, and JEANETTE WILLIAMS-
WHITE,

      Defendants.

_____/


**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
CITY DEFENDANTS' MOTION TO DISMISS AND GRANTING DEFENDANT
WILLIAMS-WHITE'S MOTION TO DISMISS**

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on September 6, 2007.

PRESENT:      THE HONORABLE PATRICK J. DUGGAN
             U.S. DISTRICT COURT JUDGE

This lawsuit arises out of the prosecution of Jay Harrison Morningstar ("Plaintiff"),

a Michigan State Police ("MSP") Trooper, for a fatal, on-duty shooting, which took place

on April 14, 2005. Plaintiff brings this lawsuit pursuant to 42 U.S.C. Section 1983 and

state law, alleging the following six counts: Count I (Avoidance of Governmental Immunity); Count II (Gross Negligence); Count III (Malicious Prosecution – State Claim); Count IV (Defamation); Count V (Violation of 42 U.S.C. § 1983 Deprivation of Civil Rights Monell Policy Claim); and Count VI[1] (Defamation).  Presently before this Court are: (1) a motion to strike or, in the alternative, to dismiss brought pursuant to Rule 12 of the Federal Rules of Civil Procedure by the City of Detroit, Detroit Police Department ("DPD"), DPD Deputy Chief Deborah Robinson, and DPD Officers James Tolbert, Glenn Davis, Kenneth Gardner, Tawnya King, Charles Zwicker, Tyrine Wheatley, and Lisa Bryson (Mix)[2] (collectively "City Defendants");[3] and (2) a motion to dismiss brought pursuant to Rule 12(b)(6) by Defendant Jeanette Williams-White, proceeding *pro se*.

## I.  Background

The following facts are based on a review of the allegations in Plaintiff's complaint and are accepted as true for the purposes of the present motions.  After clearing a traffic stop early in the morning on April 14, 2005, Plaintiff and another MSP Trooper turned right (east bound) from Brush Street onto East Fort Street in Detroit, Michigan.  Plaintiff and the other MSP Trooper were in a MSP patrol car.  After turning, Plaintiff saw a man, later identified as Eric Williams, standing in the middle of the street.  Defendants

---

[1]Count VI is erroneously numbered IV.  (Compl. p. 43.)

[2]The Court will refer to Lisa Bryson (Mix) as Lisa Mix throughout this Opinion and Order.

[3]Kym L. Worthy was voluntarily dismissed from this action on October 3, 2006. (Document No. 8.)

Wheatley and Mix arrived simultaneously at this intersection in a DPD patrol car. The DPD patrol car and the MSP patrol car were facing each other. Mr. Williams stood in between the two cars.

Plaintiff observed Mr. Williams engaging in an altercation with another person. Plaintiff stopped the patrol car and activated the vehicle's emergency lights. According to Plaintiff, Mr. Williams turned and began moving towards the driver's side of the MSP patrol car. Plaintiff exited the vehicle and demanded that Mr. Williams stop. Mr. Williams continued to move towards Plaintiff, and Plaintiff, believing that Mr. Williams was armed, shot and killed Mr. Williams.

After the shooting, Mr. Williams was searched for weapons, but none were found. Plaintiff alleges that Defendant DPD failed to properly secure the crime scene on the night of the incident. As a result, according to Plaintiff, Defendant DPD failed to prevent the loss of evidence and failed to adequately investigate the incident.

Plaintiff and MSP Trooper Theresa Maylone, the MSP trooper accompanying Plaintiff on the night of the shooting, filed incident reports recalling the incident. Defendants Wheatley and Mix also filed incident reports. Pursuant to an investigative subpoena, Defendants Wheatley and Mix also gave sworn statements describing the incident to a Wayne County prosecutor. Plaintiff alleges that Defendants Wheatley and Mix falsely stated in both their incident reports and their sworn statements to the prosecutor that they were outside the vehicle and did not hear Plaintiff say anything to Mr. Williams before Plaintiff fired a shot. (Compl. ¶¶ 68-70, 74-75, 77-78.) Furthermore, the DPD patrol car at the scene on the night of the incident was equipped

with an in-car camera, which captured portions of the incident.

On May 9, 2005, Plaintiff was charged by complaint with two counts: second-degree murder, MICH. COMP. LAWS § 750.317; and statutory manslaughter, *id.* § 750.329. On June 21, 2005, a preliminary examination was held. Defendant Wheatley was the prosecution's main witness at the preliminary examination. Plaintiff alleges that Defendant Wheatley testified falsely about the incident and withheld facts Plaintiff contends were exculpatory. For example, Plaintiff alleges that Defendant Wheatley testified at the preliminary examination that before Plaintiff fired a shot at Williams, Wheatley was outside the DPD patrol car and did not hear Plaintiff say anything to Williams before Plaintiff shot him. (*See* Compl. ¶¶ 94-97.) Allegedly relying on Defendant Wheatley's testimony and the video footage captured by the in-car camera, the presiding judge found that there was probable cause to bind Plaintiff over for trial. A jury trial commenced on November 28, 2005. On January 5, 2005, the jury returned a verdict of not guilty on both counts.

Before Plaintiff was charged, two civil lawsuits, one in this Court and one in the Wayne County Circuit Court, were filed by the estate of Mr. Williams against Plaintiff. These lawsuits were subsequently dismissed. On January 9, 2006, Defendant Williams-White, as the appointed representative of Mr. Williams' estate, brought another civil lawsuit against Plaintiff in the Wayne County Circuit Court.

## II.  City Defendants' Motion

City Defendants move pursuant to Rule 12(f) of the Federal Rules of Civil Procedure to strike all or specified paragraphs of Plaintiff's complaint. In the alternative,

City Defendants argue that all of Plaintiff's claims should be dismissed pursuant to Rule

12(b)(6).[4]  The Court will deal with these arguments separately.

In addition, at the hearing held on Defendants' motions, the Court instructed

Plaintiff to submit a brief describing the allegations in the Complaint that relate to the

gross negligence of each Defendant Police Officer and how each Defendant Police

Officer's conduct contributed to the magistrate's issuance of an arrest warrant.  On June

24, 2007, Plaintiff filed a Motion for Voluntary Dismissal of Defendants James Tolbert,

Deborah Robinson, Glenn Davis, Kenneth Gardner, Tawnya King, and Charles Zwicker.

City Defendants have not responded to this motion.  As an initial matter, the Court will

deal with Plaintiff's motion to voluntarily dismiss the above-named Defendants.

**A.  Plaintiff's Motion for Voluntary Dismissal of Defendants James Tolbert, Deborah Robinson, Glenn Davis, Kenneth Gardner, Tawyna King, and Charles Zwicker**

Rule 41(a) of the Federal Rules of Civil Procedure governs voluntary dismissals and

provides in pertinent part:

> **(1) By Plaintiff; by Stipulation**.  Subject to the provisions of Rule 23(e), of Rule 66, and of any statute of the United States, an action may be dismissed by the plaintiff without order of court (i) by filing a notice of dismissal at any time before service by *the* adverse party of an answer or of a motion for

---

[4]City Defendants also seek summary judgment as to Count V (Violation of 42 U.S.C. § 1983 Deprivation of Civil Rights Monell Policy Claim) pursuant to Rule 56 of the Federal Rules of Civil Procedure. A Court will grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).  This matter, although filed on March 14, 2006, is in its early stages procedurally.  City Defendants indicate that their present motion is filed in lieu of filing an answer.  This Court believes that to the extent City Defendants are moving for summary judgment, such a motion is premature.

summary judgment, whichever first occurs, or (ii) by filing a stipulation of dismissal signed by all parties who have appeared in the action. Unless otherwise stated in the notice of dismissal or stipulation, the dismissal is without prejudice . . . .

FED. R. CIV. P. 41(a)(emphasis added). According to the Sixth Circuit:

Fed. R. Civ. P. 41(a)(1) limits the plaintiff's authority to dismiss his complaint without prejudice and without the permission of either the adverse party or the court to the period of time before the defendant files an answer or a motion for summary judgment. During that period, the court has no discretion to deny such a dismissal.

*Aamot v. Kassel*, 1 F.3d 441, 443 (6th Cir. 1993).

In the case at bar, Defendant Williams-White is the only adverse party that has filed an answer to Plaintiff's Complaint. The other Defendants have filed a "Motion to Strike and/or Dismiss Plaintiff's Complaint Filed as Defendants' First Responsive Pleading, In Lieu of Filing an Answer of Behalf of Defendants." Contrary to Plaintiff's assertion, he does not need the approval of the Court to voluntarily dismiss Defendants James Tolbert, Deborah Robinson, Glenn Davis, Kenneth Gardner, Tawnya King, and Charles Zwicker, as none of these Defendants have filed an answer or a motion for summary judgment. Thus, the Court construes Plaintiff's Motion for Voluntary Dismissal as a notice of dismissal pursuant to Rule 41(a)(1).

Because "a Rule 41(a)(1) notice of dismissal is self-effectuating, leaving no basis upon which a District Court can prevent such a dismissal," *Aamot*, 1 F.3d at 445, Defendants James Tolbert, Deborah Robinson, Glenn Davis, Kenneth Gardner, Tawnya King, and Charles Zwicker will be dismissed without prejudice. Consequently, the Court

limits its analysis of Defendants' motions to the following remaining Defendants: City of Detroit, DPD, Tyrine Wheatley, Lisa Mix, and Jeanette Williams-White.

### B.     Defendant DPD is Not a Proper Party to this Action

As another preliminary matter, City Defendants contend and this Court agrees that Defendant DPD is not a proper party to this action.  With respect to Plaintiff's state law claims, Defendant DPD is merely a department within the authority of Defendant City of Detroit, *see* MICH. COMP. LAWS § 92.1, and thus, it is not legally separate from Defendant City of Detroit.  *See Pierzynowski v. City of Detroit Police Dep't*, 941 F.Supp. 633, 637 (E.D. Mich. 1996); *Haverstick Enters. v. Fin. Fed. Credit*, 803 F. Supp. 1251, 1256 (E.D. Mich. 1992).  Furthermore, Defendant Detroit Police Department is not a proper § 1983 defendant.  *See Laise v. City of Utica*, 970 F. Supp. 605, 608 (E.D. Mich. 1997)(holding that a city's police department is not a proper defendant on a § 1983 claim).  Therefore, Defendant DPD will be dismissed.

### C.     City Defendants' Motion to Strike

City Defendants argue that "Plaintiff's Complaint, consisting of 45 pages and 217 paragraphs, fragrantly [sic] violates several Fed.. R. Civ. P. pleading requirements set out in 8(a)(2), (e), (f), and 12(f)."[5]  (City Dft.'s Br. at 7.)  Furthermore, City Defendant's

---

[5]Rule 12(f) provides:
> Upon motion made by a party before responding to a pleading or, if no responsive pleading is permitted by these rules, upon motion made by a party within 20 days after the service of the pleading upon the party or upon the court's own initiative at any time, the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.

argue that Plaintiff's complaint contains "surplusage," "immaterial," "impertinent," and "scandalous" matters "which are so 'unrelated to claims' as to be 'unworthy' of any consideration." (*Id.*) Moreover, City Defendant's contend that "the pleadings are infiltrated with: 'hearsay' upon 'hearsay,' along with 'self-serving' and 'highly argumentative' statements, as well as, verbose 'bald assertions' of 'legal conclusions' and inappropriate comments on 'evidentiary' matters.'" (*Id.*) Thus, according to City Defendants, Plaintiff's complaint should be stricken in its entirety. In the alternative, City Defendants argue that paragraphs 16-28, 31-33, 38-92, 96-98, 102, 108-45, and 163-80 should be stricken for one or more of the reasons listed above.

Plaintiff argues that the City Defendants' characterizations of Plaintiff's allegations are incorrect. In addition, Plaintiff contends that the allegations contained in the above-mentioned paragraphs of the complaint are related to one or more of his claims.

"Partly because of the practical difficulty of deciding cases without a factual record it is well established that the action of striking a pleading should be sparingly used by the courts." *Brown & Williamson Tobacco Corp. v. United States*, 201 F.2d 819, 822 (6th Cir. 1953). "It is a drastic remedy to be resorted to only when required for the purposes of justice. . . . [and] should be granted only when the pleading to be stricken has no possible relation to the controversy." *Id.* (citations omitted). While this Court believes that Plaintiff's complaint is lengthy and the amount of detail provided is unnecessary

---

Fed. R. Civ. P. 12(f).

under the federal pleading requirements,[6] it does not believe that a motion to strike is warranted. Because Plaintiff argues that the allegations do relate to one or more of his claims, the Court is not willing to strike the entire Complaint or the allegations specified by City Defendants. Furthermore, to the extent that some of the allegations pertain to former Defendant Kym L. Worthy, they are not considered in this action. Therefore, City Defendants' motion to strike will be denied.

### D.     City Defendants' Motion to Dismiss

In the alternative, City Defendants contend that Plaintiff's claims should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). A motion to dismiss brought pursuant to Rule 12(b)(6) tests the sufficiency of a complaint. In deciding such a motion, "a district court must accept as true all allegations contained in the complaint and construe the complaint liberally in favor of the plaintiff." *Kottmyer v. Mass*, 436 F.3d 684, 688 (6th Cir. 2006). While liberal, this standard of review requires "more than the bare assertion of legal conclusions," *Tatum*, 58 F.3d at 1109, and the district court need not accept as true "unwarranted factual inferences." *Kottmyer*, 436 F.3d at 688.

City Defendants' assert several different arguments for dismissal pursuant to Rule 12(b)(6). This Court will deal with each of these arguments separately.

1.     <u>Governmental Immunity Under Michigan Law</u>[7]

---

[6]Rule 8(a) provides: "A pleading which sets forth a claim for relief . . . shall contain . . . a short and plan statement of the claim showing that the pleading is entitled to relief . . . ." FED. R. CIV. P. 8(a)(2). Furthermore, Rule 8(e) provides: "Each averment of a pleading shall be simple, concise, and direct." FED. R. CIV. P. 8(e)(1).

[7]Count I of Plaintiff's Complaint is entitled "Avoidance of Governmental Immunity." While pled as a separate count, this Court does not believe it is a separate cause of action, and

First, City Defendants contend that Plaintiff's state tort claims against them should be dismissed on the basis of governmental immunity. With respect to the City of Detroit, City Defendants contend that the City of Detroit is immune from liability pursuant to Michigan Compiled Laws Section 691.1407(1). Section 691.1407 provides: "[e]xcept as otherwise provided in this act, a governmental agency[8] is immune from tort liability if the governmental agency is engaged in the exercise or discharge of a governmental function." MICH. COMP. LAWS § 691.1407(1).

Defendant City of Detroit is a municipality and its operation of the Detroit Police Department is a governmental function. *Id.* § 691.1401(f); DETROIT, MICH., CHARTER § 7-1101. Furthermore, "arrest, detention, and prosecution activities . . . are clearly governmental functions entitled to immunity." *Kahlich v. City of Grosse Pointe Farms*, 120 Fed. Appx. 580, 585 (6th Cir. January 10, 2005)(citing *Payton v. City of Detroit*, 211 Mich. App. 375, 391-94, 536 N.W. 2d 233, 241-42 (1995)). Thus, to the extent Plaintiff is asserting state law tort claims against Defendant City of Detroit, it is immune from Plaintiff's state law claims.

With respect to Defendants Wheatley and Mix, City Defendants argue these individual police officers are also entitled to governmental immunity under Michigan law. Pursuant to Section 691.1407(2), governmental employees are immune from tort liability if all of the following are met:

_____

thus, it will not be construed as such.

[8]"'Governmental agency' means the state or a political subdivision." MICH. COMP. LAWS § 691.1401(d).

(a) The officer, employee, member, or volunteer is acting or reasonably believes he or she is acting within the scope of his or her authority.
(b) The governmental agency is engaged in the exercise or discharge of a governmental function.
(c) The officer's, employee's, member's, or volunteer's conduct does not amount to gross negligence that is the proximate cause of the injury or damage.

MICH. COMP. LAWS § 691.1407(2).  City Defendants state, without objection by Plaintiff, that "there can be no dispute that elements in subsections (a) and (b) [of Section 691.1407(2)] are present in this case."  (City Dfts.' Br. at 15.)

Thus, the Court must determine whether Plaintiff has properly alleged that the conduct of Defendants Wheatley and Mix constitutes gross negligence that was the proximate cause of Plaintiff's state law tort claims.  Gross negligence is defined as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results."  MICH. COMP. LAWS 691.1407(2).  Furthermore, under Section 691.1407(2), "[t]he phrase 'the proximate cause' is best understood as meaning the one most immediate, efficient, and direct cause preceding an injury."  *Robinson v. City of Detroit*, 462 Mich. 439, 459, 613 N.W. 2d 307, 317 (2000).

City Defendants argue "that Plaintiff has not properly stated or identified any action committed by any of the Defendant officers [that] amounts to 'gross negligence.'" (City Dfts.' Br. at 15.)  In response, Plaintiff claims that "[t]he withholding of evidence by Defendant Officers and the falsifying of testimony, among other acts plead [*sic*], are related to the controversy and support Plaintiff's viable legal theories."  (Resp. Br. at 16.)

In his Complaint, Plaintiff alleges that Defendants Wheatley and Mix were at the

scene and observed the shooting. Plaintiff also alleges that Defendants Wheatley and Mix

submitted incident reports after discussing the incident together and after viewing the

video recorded by their patrol car's in-car camera. (*Id.* ¶ 68.) Moreover, according to

Plaintiff's Complaint, Defendants Wheatley and Mix gave sworn statements to the

prosecutor on April 19, 2005, which Plaintiff alleges were false because Defendants

Wheatley and Mix stated that they were outside the vehicle, and thus capable of hearing

Plaintiff give verbal commands to Mr. Williams, at the time Mr. Williams was shot.[9] (*Id.*

¶¶ 74,75,77-78.) Finally, Plaintiff alleges that Defendants Wheatley and Mix falsified

and withheld "critical exculpatory evidence from the magistrate at the initiation of the

---

[9]Paragraphs 77 and 78 of Plaintiff's Complaint state:

> 77) Defendants Wheatley and Mix both falsely stated, prior to
> charges being brought in this matter, they were both out of their
> police vehicle prior to the shooting, witnessed the shooting from
> outside of the car for several seconds prior to the shot, and that
> they did not hear Trooper Morningstar command, order or direct
> Eric Williams to "Stop," "Show me your hands," or "Freeze
> freeze."

> 78) Defendants Wheatley and Mix did not disclose, prior to
> charges being brought in this matter that in fact they were both
> inside their police car at the time of he [*sic*] shooting; the windows
> of the car were up at the time of the shooting; and the radio was on
> at the time of the shooting, contrary to their sworn statements, and
> in a grossly negligent, and malicious manner they allowed the
> erroneous inference to be made that they were able to hear whether
> Trooper Morningstar commanded Eric Williams to stop, when in
> truth and fact, they were not.

Moreover, paragraph 92 of Plaintiff's Complaint alleges that the video footage from the in-car
camera mounted in Defendants Wheatley's and Mix's patrol car "demonstrates that Defendants
Wheatley and Mix were inside of DPD scout car #01 when the shot was fired, and not outside . .
. ."

proceedings." (*Id.* ¶ 186f.)

Accepting these allegations as true, this Court concludes that the factual allegations in Plaintiff's Complaint as they apply to Defendants Wheatley and Mix are sufficient to state a claim of gross negligence. If proven, these allegations could amount to "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." Moreover, at this stage in the proceedings, this Court cannot conclude that the actions of Defendants Wheatley and Mix were not "the one most immediate, efficient, and direct cause preceding an injury." Thus, City Defendants' motion to dismiss Plaintiff's gross negligence claims against Defendants Wheatley and Mix will be denied.

2. Plaintiff's Malicious Prosecution Claim

City Defendants contend that Plaintiff's state law claim of malicious prosecution should be dismissed because Plaintiff cannot "prove" or "establish" that there was no probable cause to charge him. (City Dft.'s Br. at 15-16.) To state a viable claim for malicious prosecution under Michigan law a plaintiff must allege:

> (1) that the defendant has initiated a criminal prosecution against him, (2) that the criminal proceedings terminated in his favor, (3) that the private person who instituted or maintained the prosecution lacked probable cause for his actions, and (4) that the action was undertaken with malice or a purpose in instituting the criminal claim other than bringing the offender to justice.

*Matthews v. Blue Cross & Blue Shield*, 456 Mich. 365, 378, 572 N.W. 2d 603, 609-10 (1998)(citations omitted). The Sixth Circuit in *Adams v. Metiva*, 31 F.3d 375 (6th Cir. 1994) held that a malicious prosecution claim under Michigan law could be sustained when a defendant police officer "intentionally lied in his incident report in order to

procure a criminal proceeding against [the plaintiff] which defendant knew was not supported by probable cause." *Id.* at 388 (citing *King v. Arbic*, 159 Mich. App. 452, 406 N.W. 2d 852 (1987)); *see also Belt v. Ritter*, 18 Mich. App. 495, 503, 171 N.W. 2d 581, 586 (1969)(stating that "the only situation an action for malicious prosecution would properly lie is where a police officer knowingly swears to false facts in a complaint, without which there is no probable cause"). On the other hand, alleging that a police officer failed "to include all exculpatory facts is not adequate to sustain a suit for malicious prosecution." *Payton v. City of Detroit*, 211 Mich. App. 375, 395, 536 N.W. 2d 233, 242 (1995).

With respect to Defendants Wheatley and Mix, Plaintiff alleges that they completed incident reports after the shooting and gave sworn testimony to the prosecutor on April 19, 2005. (Compl. ¶¶ 68-70.) Plaintiff's alleges that although Defendants Wheatley's and Mix's incident reports indicated that they did not hear Plaintiff say anything before he shot Mr. Williams, they were in their patrol car with the windows rolled up and the radio on, and thus, they could not have heard anything.[10] (*Id.* ¶¶ 69-70, 77-78.)

Construing Plaintiff's Complaint liberally, this Court concludes that any statement by Wheatley and Mix that they did not hear Plaintiff say anything to Mr. Williams before he was shot implies that they were outside the DPD patrol car and in a position to hear Plaintiff tell Mr. Williams to "Stop," "Show me your hands, or "Freeze freeze." (*Id.* ¶ 77.) Consequently, this Court believes that, accepting the above-mentioned allegations as

---

[10]*See supra* footnote 9.

true, (*id.* ¶¶ 68-70, 77-78), Defendants Wheatley and Mix knowingly included false facts in their incident reports and sworn statements to the prosecutor without which their may not have been probable cause to initiate a criminal proceeding against Plaintiff. *Adams*, 31 F.3d at 389. Therefore, this Court believes that Plaintiff has sufficiently alleged a claim for malicious prosecution against Defendants Wheatley and Mix based on the factual allegations indicating that they included false facts in their incident reports and gave false statements to the prosecutor. However, to the extent that Plaintiff's malicious prosecution is premised on Wheatley's and Mix's failure to include all exculpatory facts in their incident reports or provide all exculpatory facts to the prosecutor in their sworn statements, Plaintiff has failed to adequately allege a malicious prosecution claim. *See Payton*, 211 Mich. App. at 395, 536 N.W. 2d at 242.

3. Plaintiff's 42 U.S.C. § 1983 Deprivation of Civil Rights *Monell* Policy Claim

City Defendants also contend that Count V of Plaintiff's Complaint alleging "42 U.S.C. § 1983 Deprivation of Civil Rights *Monell* Policy Claim" should be dismissed for failure to state a claim. City Defendants argue that the following allegations in Plaintiff's Complaint are insufficient to state a claim for municipal liability under *Monell*:

> 206. At all times material to this complaint, Defendant City of Detroit and its Police Department and Police trainer, Defendant Deborah Robinson had policies, practices, procedures, and customs that included, among other things, failing to properly train, supervise, discipline, monitor, counsel and/or otherwise control Defendants and employees so as not to abuse the civil rights of [Plaintiff] and other citizens.
>
> 207. The inadequacy of the training and supervision

maintained and implemented by the policies, practices,
procedures and customs is the result of deliberate indifference
of Defendant City of Detroit and its Police Department, who
willfully refused, and with deliberate indifference, failed to
comply with United States District Court, Eastern District of
Michigan, Consent Decree 03-72258.

208.  The failure to train amounts to deliberate indifference to
the rights of [Plaintiff] and the training deficiency caused the
ultimate injury to [Plaintiff], those injuries being set forth
above.

(Compl. ¶¶ 206-08.)  City Defendants argue that "deliberate indifference is a stringent

standard" and "Plaintiff has failed to state and cannot establish this 'stringent' standard."

(City Dfts.' Br. at 18.)  Furthermore, City Defendants also contend that "Plaintiff has

failed to state or 'identify' any 'decision-maker' or the specific 'policy' which was the

'direct causal link' or the 'moving force' behind the claimed violation of Plaintiff's

federal tights [*sic*]."  (*Id.* at 19.)

Under Section 1983, "[a] municipality may be held liable only 'when execution of a

government's policy or custom, whether made by its lawmakers or by those whose edicts

or acts may fairly be said to represent official policy, inflicts the injury.'"  *Bennett v. City

of Eastpointe*, 410 F.3d 810, 818-19 (6th Cir. 2005)(quoting *Monell v. Dep't of Social

Servs.*, 436 U.S. 658, 694, 98 S. Ct. 2018, 2037-38 (1978)).  In addition to being held

liable for executing an unconstitutional policy or custom, "a city can be held liable under

§ 1983 for inadequate training of its employees . . . ."  *City of Canton v. Harris*, 489 U.S.

378, 389, 109 S. Ct. 1197, 1204 (1989).  "Only where a failure to train reflects a

'deliberate' or 'conscious' choice by a municipality - a policy as defined by [the Supreme

Court's] prior cases - can a city be liable for such failure under section 1983."  *Id.*

"Furthermore, for municipal liability, there must be an 'affirmative link between the policy and the particular constitutional violation alleged.'" *Id.* (quoting *Oklahoma City v. Tuttle*, 471 U.S. 808, 823, 105 S. Ct. 2427, 2436 (1985)).

At the hearing, Plaintiff stated that Count V of his Complaint asserts only a municipal liability claim under *Monell*. A municipality, however, cannot be held liable under Section 1983, unless a plaintiff properly alleges that an individual official violated his or her constitutional rights. *Bukowski v. City of Akron*, 326 F.3d 702, 712-13 (6th Cir. 2003). In Count V of his Complaint, Plaintiff alleges that "Defendants acting under color of law deprived [him] of his rights under the Fourth and Fourteenth Amendments to the United States Constitution . . . ." (Compl. ¶ 203.) In his Motion for Voluntary Dismissal, Plaintiff states that his "case against . . . officers Wheatley and Mix[] turns on two allegations: (1) Officers Wheatley and Mix[] affirmatively lied about the evidence against [Plaintiff],[11] and (2) without this evidence, probable cause for [Plaintiff's] arrest was missing." (Pl.'s Mot. Vol. Dis. ¶ 5.) As Plaintiff correctly contends, a Fourth Amendment violation can lie when a police officer "fabricated evidence and manufactured probable cause." *Spurlock v. Satterfield*, 167 F.3d 995, 1005 (6th Cir. 1999); *see also Hinchman v. Moore*, 312 F.3d 198, 205-06 (6th Cir. 2002). Consequently, this Court believes that, if proven to be true, the allegations that Wheatley

[11]To the extent that Plaintiff's Fourth Amendment claim against Wheatley turns on Wheatley's alleged false testimony at the preliminary examination, Wheatley is entitled to absolute testimonial immunity from such a claim. *See Hinchman*, 312 F.3d at 205. However, because "[i]mmunity regarding testimony . . . does 'relate backwards' to events that transpired prior to testifying, even if they are related to the subsequent testimony," *id.*, Wheatley is not entitled to absolute testimonial immunity for the alleged falsification of his incident report and false statements to the prosecutor.

and Mix included false facts in their incident reports and gave false statements to the prosecutor in order to manufacture probable cause are sufficient to state a Fourth Amendment violation.[12] *See id.*

Moreover, this Court also believes that the above-listed allegations of Plaintiff's Complaint adequately allege a municipal liability claim under *Monell. See Leatherman v. Tarrant Co. Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168-69, 113 S. Ct. 1160, 1163 (1993)(rejecting the application of a heightened pleading standard for municipal liability under § 1983 and stating that "federal courts must rely on summary judgment and control of discovery to weed out unmeritorious claims sooner rather than later"). Therefore, City Defendants' motion to dismiss Plaintiff's *Monell* claim in Count V of his Complaint will be denied.

Finally, City Defendants contend that to the extent that Plaintiff is claiming a violation of the Michigan Constitution under Count V of his complaint, such a claim "is void, as a matter of law."[13] (City Dfts.' Br. at 17.) In support of this argument, City Defendants cite *Jones v. Powell*, 462 Mich. 329, 612 N.W. 2d 423 (2000). The court in *Jones* held that no inferred damages remedy exists in an action against a municipality or an individual government employee for a violation of Michigan's State Constitution. *Id.* at 335, 612 N.W. 2d at 426. Thus, to the extent that Plaintiff, in Count V of his

---

[12]These allegations can be found at paragraphs 69, 74c., 75d., 77-78 of Plaintiff's Complaint.

[13]In Count V, Plaintiff alleges: "Defendants acting under color of law deprived [Plaintiff] of his rights under . . . the Constitution of the State of Michigan, Article I, Section 2." (Compl. ¶ 42.)

complaint, is seeking damages for a violation of the Michigan State Constitution, the remaining City Defendants are entitled to dismissal of such a claim as a matter of law.

## III.    Defendant Williams-White's Motion to Dismiss

The second motion before this Court is Defendant Williams-White's motion to dismiss.[14]  Defendant Williams-White argues that she is entitled to dismissal of Plaintiff's Section 1983 and defamation claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[15]

First, Defendant Williams-White argues that she does not come within the purview of Section 1983 because she did not conspire with a state official.  Although "Section 1983 does not reach purely private conduct," it does apply to a private party when they conspire with a state official.  *Moore v. Paducah*, 890 F.2d 831, 833-34 (6th Cir. 1989). Furthermore, "[a] civil conspiracy is 'an agreement between two or more persons to injure another by unlawful action.'" *Farhat v. Jopke*, 370 F.3d 580, 599 (6th Cir. 2004)(quoting *Weberg v. Franks*, 229 F.3d 514, 526 (6th Cir. 2000)).  "Claims of conspiracy must be pled with some specificity: vague and conclusory allegations that are unsupported by material facts are not sufficient to state a § 1983 claim." *Id.* (citing *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987)).

---

[14]Defendant Williams-White asserts a list of ten different reasons Plaintiff's claims against her should be dismissed.  Defendant Williams-White, however, only briefs the arguments numbered 2.-4. and the argument contained in the first sentence of the argument numbered 5. (Dft. Williams-White's Mot. at 2.)  Thus, the Court considers only the briefed arguments. Furthermore, as stated above, to the extent Defendant Williams-White is moving for summary judgment, such a motion is premature.  *See supra* page 4 n.3.

[15]The standard of review this Court applies to a 12(b)(6) motion is set forth above.  *See supra* page 7.

Plaintiff contends that he has stated a claim for civil conspiracy against Defendant

Williams-White. Plaintiff contends in his brief that he "has alleged that Defendant

engaged in repeated conduct which supports Plaintiff's claim[] of . . . civil conspiracy."

(Pl.'s Resp. Br. at 13.) Plaintiff, however, fails to point to any allegation in his complaint

supporting his argument. Nonetheless, in this Court's opinion, the only allegations in

Plaintiff's complaint that could relate to a claim for civil conspiracy are the following:

> 130) Defendant Attorney Jeanette Williams-White and other
> family members of Eric Williams met with prosecutors prior
> to May 9, 2005, and publicly pressured prosecutors to charge
> [Plaintiff] with Murder.
>
> 131) On or about April 28, 2005, Defendant Attorney Jeanette
> Williams-White met with Assistant Prosecuting Attorney
> James D. Gonzales to complain that she believed the decision
> to charge [Plaintiff] was unduly delayed, thereby publicly
> pressuring the Wayne County Prosecutor's Office to charge
> [Plaintiff].
>
> 132) Following the meeting on or about April 28, 2005, with
> Assistant Prosecuting Attorney James D. Gonzales, Defendant
> Attorney Jeanette Williams-White publicly complained that
> [Plaintiff] received different treatment than that of a non-
> police officer . . .

(Compl. ¶¶ 130-32).

Based on these allegations, Defendant Williams-White applied public pressure on

the prosecutor. The alleged application of public pressure is not synonymous with

conspiring to injure another through unlawful action. Furthermore, a conspiracy requires

some sort of agreement or a "general conspiratorial objective." *Weberg v. Franks*, 229

F.3d 514, 526 (6th Cir. 2000)(quoting *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir.

1985)). Plaintiff's complaint does not include any mention of a conspiracy or an

agreement between Defendant Williams-White and a state official.  Consequently, Plaintiff's allegations are insufficient to state a Section 1983 claim against Defendant Williams-White.[16]

Second, Defendant Williams-White argues that Plaintiff's defamation claim against her should be dismissed because it fails to state a claim upon which relief can be granted. In his response brief, Plaintiff does not address Defendant Williams-White's arguments as they pertain to his defamation claim.  Because Plaintiff has failed to respond, he has abandoned this claim.  Therefore, it will be dismissed.

## IV.     Conclusion

For the reasons stated above, Defendants Robinson, Tolbert, Davis, Gardner, King, and Zwicker will be dismissed from this action.  Defendant DPD will be dismissed from this action as it is not a proper party to Plaintiff's state and federal claims.  Furthermore, Defendant City of Detroit is entitled to dismissal of Plaintiff's state tort claims based on governmental immunity under Michigan law.  To the extent Plaintiff's malicious prosecution claim against Defendants Wheatley and Mix is premised on their failure to include all exculpatory facts in their incident reports or statements to the prosecutor, such a claim will also be dismissed.  Furthermore, to the extent that Plaintiff, in Count V of his complaint, is seeking damages for a violation of the Michigan State Constitution, the

---

[16]In his response to Defendant Williams-White's motion to dismiss, Plaintiff states "[i]f the Court grants any of the Defendants' Motions, in whole or in part, under Rule 15(a), [Plaintiff] respectfully requests the opportunity to amend his complaint."  (Pl.'s Resp. at 14). Although Plaintiff cites to Rule 15(a) of the Federal Rules of Civil Procedure, the Court will not construe Plaintiff's Response as a motion for leave to amend because Plaintiff did not file a separate motion, brief in support of such a motion, or "attached the proposed amended pleading to the motion" as required by E.D. Mich. L.R. 15.1.

remaining City Defendants are entitled to dismissal of this claim as a matter of law. Finally, Defendant Williams-White's motion to dismiss Plaintiff's Section 1983 and defamation claims against her will be granted.

Accordingly,

**IT IS ORDERED**, that Defendants Deborah Robinson, James Tolbert, Glenn Davis, Kenneth Gardner, Tawyna King, and Charles Zwicker are **DISMISSED WITHOUT PREJUDICE** pursuant to Rule 41(a)(1) of the Federal Rules of Civil Procedure.

**IT IS FURTHER ORDERED**, that City Defendants' motion is **GRANTED IN PART AND DENIED IN PART**. City Defendants' motion to strike and City Defendants' motion to dismiss Plaintiff's state law claim of gross negligence and malicious prosecution claim against Defendants Wheatley and Mix based on their alleged falsification of their incident reports and sworn statements to the prosecutor, and Plaintiff's Section 1983 *Monell* claim against Defendant City of Detroit are **DENIED.** City Defendants' motion to dismiss Defendant DPD as an improper party, Plaintiff's state law tort claims against Defendant City of Detroit on the basis of governmental immunity, Plaintiff's malicious prosecution claim against Defendants Wheatley and Mix based on their alleged failure to include all exculpatory facts in their incident reports and sworn statements to the prosecutor, and Plaintiff's claim seeking damages under the Michigan Constitution in Count V of his Complaint is **GRANTED**.

**IT IS FURTHER ORDERED**, that Defendant Williams-White's motion to dismiss

is **GRANTED**.

s/PATRICK J. DUGGAN
UNITED STATES DISTRICT JUDGE

Copies to:
Richard G. Convertino, Esq.
Lenore M. Ferber, Esq.
Jacob Schwarzberg, Esq.
John A. Schapka, Esq.
Jeanette Williams-White, Esq.