UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAY HARRISON MORNINGSTAR,
          Plaintiff,

                                            Case No. 06-11073

v.

                                            Honorable Patrick J. Duggan

CITY OF DETROIT, TYRINE
WHEATLEY, and LISA BRYSON (MIX),
          Defendants.

### OPINION AND ORDER

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on April 23, 2009.
PRESENT: THE HONORABLE PATRICK J. DUGGAN
U.S. DISTRICT COURT JUDGE

This lawsuit arises out of the prosecution of Jay Harrison Morningstar ("Plaintiff"), a

Michigan State Police Trooper, for a fatal, on-duty shooting, which took place on April 14,

2005.  In January 2009 the case went trial and the jury returned a verdict totaling $500,000

in Plaintiff's favor on his claim of malicious prosecution against Detroit Police Officer

Tyrine Wheatly ("Defendant").  Presently before the Court is Defendant's motion for

judgment as a matter of law, or in the alternative, for a new trial.  Pursuant to Eastern District

of Michigan Local Rule 7.1(e)(2), the Court dispensed with oral argument on April 16, 2009.

**I. Factual and Procedural Background**

The following description of the events that led to Plaintiff's criminal prosecution is

taken from Plaintiff's testimony at the trial held in this Court in January 2009.[1]  (*See* Pl.'s

---

[1]The Court has made no factual findings as to the actual events of April 14, 2005, and
expresses no opinion as to the veracity of Plaintiff's testimony.

Resp. at 1-3.)  In the early morning of April 14, 2005, Plaintiff and Michigan State Police Trooper Theresa Maylone were returning to the highway after completing a traffic stop when they observed Eric Williams standing in a cross walk on Fort Street in downtown Detroit. Plaintiff saw Williams arguing with a man on the sidewalk and believed that Williams had a weapon.  Plaintiff stopped his vehicle, activated the emergency lights, and got out. Williams, looking deranged and angry, turned and began advancing toward Plaintiff. Drawing his service weapon, Plaintiff demanded that Williams stop but Williams was unresponsive and continued approaching with his hands hidden inside an oversized coat. Believing that Williams was armed and about to lunge at him in an attack, Plaintiff shot and killed Williams.  It was ultimately determined that Williams was unarmed.

As the above incident was unfolding, Defendant and his partner, Detroit Police Officer Lisa Bryson (Mix),[2] arrived at the scene.  An in-car digital camera mounted to Defendant's vehicle made a visual recording of the incident and the footage was turned over to the Wayne County Prosecutor's Office.  Defendant and Mix also submitted police reports to the prosecutor indicating that they had seen Plaintiff shoot and kill Williams as Williams walked toward him slowly.  Neither report indicated that Plaintiff yelled at Williams to stop.  Five days after the incident, Defendant testified pursuant to a prosecutor's subpoena that he was out of his vehicle prior to the shooting and that Plaintiff never said anything before firing.

On May 9, 2005, Plaintiff was charged with second-degree murder and statutory manslaughter.  A preliminary examination was held on June 21, 2005, before Judge

_____

[2]Lisa Bryson's name changed sometime after the original April 2005 incident.  For simplicity, the Court will refer to her as "Mix."

Baltimore of the 36th District Court. At the hearing, the prosecutor showed the footage from Defendant's in-car camera and Defendant was the only fact witness called to testify. Defendant indicated that he was out of his vehicle before Plaintiff fired his weapon and that he heard the shot when it was fired. Judge Baltimore found that probable cause existed for both counts and bound Plaintiff over for trial. Plaintiff was later acquitted of all charges by a jury.

Plaintiff filed the present civil action on March 14, 2006. In his Complaint, Plaintiff alleged six counts against twelve defendants. After an initial series of motions to dismiss by the various defendants, the case was reduced to gross negligence and malicious prosecution claims against Defendant and Mix and a claim of municipal liability under 42 U.S.C. § 1983 against the City of Detroit. The case proceeded to trial on January 13, 2009.

At trial, Plaintiff presented expert testimony regarding the content of the footage from the in-car camera. Plaintiff's expert testified that Defendant's vehicle came to a complete stop at the scene of the incident at the same time that Plaintiff fired his weapon. The expert's analysis also revealed that it then took Defendant and Mix another thirteen seconds to exit the vehicle. An in-car microphone established that Defendant had the radio playing at the time of the shooting and the sound of the shot could not be heard over the radio. Based on this testimony, Plaintiff argued that Defendant and Mix lied about being out of the vehicle when Plaintiff fired his weapon and that they provided misleading statements indicating that Plaintiff did not yell "stop" when, in reality, they were never in position to hear Plaintiff yell or say anything.

Once Plaintiff rested, Defendant, Mix, and the City of Detroit moved for a directed

3

verdict.  At that time, defense counsel argued that Defendant was shielded by testimonial immunity from liability for false or misleading statements made during the preliminary examination.  The Court granted the motion for directed verdict as to the City of Detroit but denied it as to Defendant and Mix.

Defendant then presented his defense to the jury.  An assistant prosecutor who worked on Plaintiff's criminal case testified that Defendant's and Mix's statements had not impacted his decision to charge Plaintiff with second-degree murder and statutory manslaughter.  In fact, the assistant prosecutor testified that he assumed Plaintiff had told Williams to stop despite Defendant's and Mix's statements to the contrary.  Defense counsel then admitted the transcript from the June 21, 2005, preliminary examination in an attempt to establish that Defendant's statements had not been false or misleading and had not impacted Judge Baltimore's finding of probable cause.  Upon resting, defense counsel again moved for a directed verdict but did not re-raise the issue of testimonial immunity.  The Court granted the motion as to Plaintiff's gross negligence claims and, after noting that neither Defendant nor Mix could be said to have "initiated" Plaintiff's criminal prosecution in light of the assistant prosecutor's testimony,[3] the Court dismissed Mix from the lawsuit.  The only claim that went to the jury, then, was Plaintiff's malicious prosecution claim against Defendant.  This claim was based on the theory that Defendant "continued" Plaintiff's criminal prosecution by his

---

[3]Among other things, a malicious prosecution claim requires proof that the defendant initiated, continued, or maintained the prosecution.  *See Matthews v. Blue Cross and Blue Shield of Mich.*, 456 Mich. 365, 383, 572 N.W.2d 603, 612 (1998).

4

testimony at the preliminary examination.[4]

Ultimately the jury returned a verdict totaling $500,000 in Plaintiff's favor. The jury awarded Plaintiff $250,000 in compensatory damages, $5,000 a year for twenty years in future damages, and $150,000 in punitive damages. Judgment was entered on January 27, 2009, and Defendant filed the present motion on February 6, 2009. In his motion, Defendant argues that he is entitled to judgment as a matter of law on the basis of testimonial immunity, governmental immunity, and collateral estoppel. Defendant also argues that the punitive and future damage awards should be vacated and that the jury instructions were unfair. In an addendum to his motion, Defendant argues that this Court lacks subject-matter jurisdiction over this case. Each issue will be addressed in turn.

## II. Jurisdiction

"A litigant generally may raise a court's lack of subject-matter jurisdiction at any time in the same civil action, even initially at the highest appellate instance." *Kontrick v. Ryan*, 540 U.S. 443, 455, 124 S. Ct. 906, 915 (2004). In this case, Defendant raised the issue of the Court's subject-matter jurisdiction in the addendum to his motion for judgment as a matter of law. Although this was the last issue raised, the Court addresses the issue first because lack of jurisdiction would render the remaining issues moot.

Defendant argues that, because only a state law claim of malicious prosecution went to the jury, this Court lacks jurisdiction. Pursuant to federal statute, this Court has subject-matter jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of

---

[4]Mix could not be held liable for "continuing" Plaintiff's prosecution because she did not testify at the preliminary examination.

5

the United States." 28 U.S.C. § 1331. And where such jurisdiction exists, the Court also has "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . ." 28 U.S.C. § 1367(a). Whether the Court has jurisdiction over a case as one arising under the Constitution or federal law is determined by analyzing Plaintiff's complaint; if it alleges a substantial cause of action under federal law, subject-matter jurisdiction exists. *See Metro Hydroelectric Co., LLC v. Metro Parks*, 541 F.3d 605, 610 (6th Cir. 2008).

Plaintiff's complaint contains a count against the City of Detroit alleging an action under 42 U.S.C. § 1983. Subject-matter jurisdiction based on this claim "is defeated only if the federal claim clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous." *Medical Mutual of Ohio v. K. Amalia Enters. Inc.*, 548 F.3d 383, 389 (2008) (quotations omitted). Having previously held that Plaintiff's § 1983 claim against the City of Detroit was sufficient to survive a motion to dismiss, the Court likewise concludes that the claim was sufficiently "substantial" to bring the case within the jurisdiction of this Court pursuant to 28 U.S.C. § 1331. (*See* Sept. 6, 2007, Opinion and Order, Doc. No. 27 at 15-19.) Furthermore, because Plaintiff's state-law claims arose from the same case or controversy as the federal claim, the Court properly exercised jurisdiction over the entire case. *See* 28 U.S.C. § 1367(a).

Nonetheless, Defendant argues that the Court inappropriately retained jurisdiction over Plaintiff's state-law claims after Plaintiff waived and abandoned any federal claims against the individual defendants and failed to pursue the federal claim against the City of Detroit. According to Defendant, Plaintiff's strategic decisions in this case amounted to voluntary

dismissal of his federal claim.[5]  The Court disagrees.

As this case went to trial, Plaintiff's claim against the City of Detroit remained pending and Plaintiff attempted to introduce evidence supporting that claim.  (*See* Def.'s Mot. Ex. 1 at 30-33.)  The underlying theme of Plaintiff's case was that he was arrested, charged, and tried for murder in the absence of probable cause–facts which, if proven, establish a Fourth Amendment violation.  *See, e.g.*, *Gregory v. City of Louisville*, 444 F.3d 725, 750 (6th Cir. 2006).  Under these circumstances, it cannot be said that Plaintiff voluntarily waived or abandoned his federal claim.

By the time it became apparent to the Court that Plaintiff could not succeed on his federal claim against the City of Detroit, Plaintiff had already presented his case to a jury.  At that stage in the proceeding, dismissal of Plaintiff's pendant state-law claims was discretionary.  13 U.S.C. § 1367(c)(3) ("The district courts *may* decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction . . . ." (emphasis added)).  The Court concludes, however, that the interests of judicial economy weigh in favor of its continued exercise of supplemental jurisdiction over the case.  Therefore, to the extent that Defendant seeks dismissal of this case for lack of subject-matter jurisdiction, Defendant's motion is denied.

## III. Waiver of Testimonial Immunity Defense

---

[5]In making this "voluntary dismissal" argument, Defendant cites cases where plaintiffs amended their complaints and, in so doing, dropped all their federal claims.  (Def.'s Addendum at 8-9.)  In this case, Plaintiff never amended his complaint.

Defendant primarily seeks judgment as a matter of law on grounds that testimonial immunity shields him from civil liability for the conduct which formed the basis of the jury's verdict. Before addressing the merits of Defendant's argument, Plaintiff responds that Defendant waived or abandoned testimonial immunity as a defense by failing to pursue it in a timely fashion and by admitting the transcript of his preliminary examination testimony as an exhibit for the jury's consideration. The Court disagrees.

Although defense counsel's performance in this case has been somewhat less than commendable, the Court does not find that his conduct justifies a holding that Defendant completely waived or abandoned testimonial immunity as a defense. When considering a delay in raising the defense of qualified immunity, the Sixth Circuit held that "the trial court has discretion to find a waiver if a defendant fails to assert the defense within time limits set by the court or if the court otherwise finds that a defendant has failed to exercise due diligence or has asserted the defense for dilatory purposes." *English v. Dyke*, 23 F.3d 1086, 1090 (6th Cir. 1994). In this case, defense counsel was slow to raise the issue of testimonial immunity and, when he did raise it, he failed to pursue it aggressively.[6] Nonetheless, defense

_____

[6]In lieu of filing an answer to Plaintiff's complaint, defense counsel initially filed a motion to dismiss but did not assert testimonial immunity as a defense in that motion. After that motion was denied in part, the case proceeded through discovery and defense counsel let the dispositive motion deadline pass without filing any additional motions. Defense counsel first raised the issue of testimonial immunity in a motion for directed verdict at the close of Plaintiff's proofs at trial. In making that motion–one which consumes sixteen pages of transcript–defense counsel made a single, almost fleeting reference to the defense of testimonial immunity. (Def.'s Mot. Ex. 1 at 3-19.) When denying the motion for directed verdict, the Court did not specifically address the testimonial immunity argument. (Def.'s Mot. Ex. 1 at 39-40.) Defense counsel, however, did not request a ruling on that defense nor did he reassert testimonial immunity as a defense in his second motion for directed verdict, which took place after he had rested and before the case went to the jury. (Def.'s Mot. Ex. 1 at 45-47, 49-51.) Rather, defense counsel waited until the jury sent out a question regarding "probable cause" to argue again that his client

counsel did raise the defense in his first motion for directed verdict at the close of Plaintiff's proofs, (Def.'s Mot. Ex. 1 at 11), mentioned it again during discussion of a jury question, (Def.'s Mot. Ex. 2 at 21), and has now presented the argument to the Court in his motion for relief for judgment.[7]  While the Court would have preferred that Defendant raise the issue of testimonial immunity in a pretrial motion for summary judgment, the Court cannot conclude that he completely waived the defense by failing to do so.  Indeed, Rule 12 of the Federal Rules of Civil Procedure specifically allows parties to wait until trial to raise legal defenses.  Fed. R. Civ. P. 12(h)(2).

Even so, Plaintiff also argues that Defendant waived the testimonial immunity defense by admitting the transcript of his preliminary examination testimony as an exhibit for the jury's consideration.  In support of this argument, Plaintiff cites cases where criminal defendants have been barred from obtaining reversals of their convictions on grounds that testimony elicited *for their defense* was improperly admitted.  *People v. Riley*, 462 Mich. 442, 448, 636 N.W.2d 514, 517 (2001); *Hicks v. Sherman*, No. 04-cv-179, 2007 WL 2238675, at *7 (W.D. Mich. Aug. 1, 2007) (Plaintiff actually refers to the content of a magistrate judge's report and recommendation rather than the opinion of the district court). The Court concludes, however, that these cases have no bearing on the present case.

Unlike the attorneys in the aforementioned cases, defense counsel effectively objected to the use of the preliminary examination transcript when he raised the issue of testimonial

---

was shielded from liability based on testimonial immunity.  (Def.'s Mot. Ex. 2 at 21.)

    [7]In arguing that Defendant's assertion of testimonial immunity is untimely, Plaintiff cites several cases that prohibit the use of error as an "appellate parachute."  (Pl.'s Resp. at 7, 11.) Because this case is not yet on appeal, these cases are not useful to the Court's analysis.

immunity in his first motion for a directed verdict. Faced with the Court's denial of his motion, however, defense counsel pursued alternative defenses to Plaintiff's malicious prosecution claim, including arguments that Defendant's testimony was not false or misleading and was not a cause of Plaintiff's continued prosecution. To effectively present these arguments, defense counsel needed to place the content of Defendant's preliminary examination testimony before the jury. Defense counsel's pursuit of these alternative defenses was reasonable in light of the Court's ruling on the motion for a directed verdict and specifically permitted by Rule 8 of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 8(d) (allowing parties to plead alternative and inconsistent defenses). The Court therefore concludes that defense counsel's admission of the preliminary examination transcript did not waive Defendant's right to pursue testimonial immunity as a defense.

## IV. Testimonial Immunity and Malicious Prosecution

Moving to the merits of the testimonial immunity defense, Defendant argues simply that it shields him from being liable for statements made while testifying at the state court preliminary examination. Plaintiff presents two arguments in response: first, Plaintiff asserts that Sixth Circuit case law allows the use of preliminary examination testimony as grounds for a malicious prosecution claim; second, Plaintiff argues that Defendant acted as a "complaining witness" and, as such, cannot claim the protection of testimonial immunity. Both arguments fail.

Plaintiff's argument that preliminary examination testimony provides a legitimate basis for a malicious prosecution claim is unfounded and irrelevant. In *Buttino v. City of Hamtramck*, 87 Fed. Appx. 499, 502-05 (6th Cir. 2004), and *Darrah v. City of Oak Park*, 255

10

F.3d 301, 310-13 (6th Cir. 2001), the Sixth Circuit discussed the content of preliminary examination testimony to determine whether the plaintiff's were collaterally estopped from relitigating the issue of probable cause. The defense of collateral estoppel specifically requires courts to determine what issues were actually litigated by the parties at prior proceedings. *Buttino*, 255 Fed. Appx. at 502. The Sixth Circuit's consideration of the content of a defendant's preliminary examination testimony in the context of this inquiry is not equivalent to a Sixth Circuit holding that testimonial immunity does not apply. In both *Buttino* and *Darrah*, it was unnecessary for the Sixth Circuit to reach the issue of testimonial immunity because neither Plaintiff could establish that they had been arrested or prosecuted in the absence of probable cause. *Id.* at 505; *Darrah*, 255 F.3d at 313. And, even if testimonial immunity had been addressed, those cases involved claims brought under 42 U.S.C. § 1983 rather than Michigan state law.

Under Michigan law, "witnesses who testify during the course of judicial proceedings enjoy quasi-judicial immunity." *Maiden v. Rozwood*, 461 Mich. 109, 134, 597 N.W.2d 817, 830 (1999). This quasi-judicial immunity makes witnesses "wholly immune from liability for the consequences of their testimony or related evaluations." *Id.* (quotation omitted). Even "[f]aslity or malice on the part of the witness does not abrogate the privilege." *Id.* Absent some other exception to this rule, then, Defendant is immune from liability for his testimony at Plaintiff's state court preliminary examination. *See id.*, 461 Mich. at 135, 597 N.W.2d at 830 (applying witness immunity to testimony given at a preliminary examination).

Plaintiff's second argument is that an exception exists where the defendant acts as a "complaining witness" at the judicial proceeding. A complaining witness has been described

11

as one "who played a role in initiating a prosecution." *White v. Frank*, 855 F.2d 956, 959

(6th Cir. 1988). According to some appellate courts, complaining witnesses are not protected

by testimonial immunity. *See Harris v. Roderick*, 126 F.3d 1189, 1199 (9th Cir. 1997);

*White*, 855 F.2d at 961. Plaintiff argues that, although Defendant was not identified in the

criminal proceedings as the complainant or complaining witness, he served in that capacity

when he provided a written police report to the prosecutor, testified ex parte before the

prosecutor pursuant to a subpoena, and testified as the only fact witness at the preliminary

examination. Plaintiff's argument fails for several reasons.

First, Plaintiff again relies on federal law to establish this alleged exception to

testimonial immunity. Because Plaintiff pursued his claim under Michigan law, he cannot

rely on federal exceptions to avoid the testimonial immunity defense.

Second, Defendant's conduct prior to the preliminary examination was not submitted

to the jury as a basis for Plaintiff's malicious prosecution claim. To establish that Defendant

acted as a "complaining witness" and, in an attempt to establish that Defendant's liability was

not based solely on his preliminary examination testimony, Plaintiff refers to the content of

Defendant's police report and his ex parte testimony before the prosecutor. These arguments

ignore the fact that the Court dismissed all claims based on conduct preceding the

preliminary examination. (Def.'s Mot. Ex. 1 at 45, 47-51.)[8] Indeed, the jurors were

instructed that a verdict for Plaintiff required them to find that Defendant's *preliminary*

_____

[8]In fact, once the Court held that conduct before the preliminary examination could not
support Plaintiff's claims, Mix had to be dismissed because she did not testify at the preliminary
examination. Plaintiff has not challenged the Court's ruling that conduct preceding the
preliminary examination could not support his claims.

12

*examination testimony* was the proximate cause of the state court judge's finding of probable cause.  (Def.'s Mot. Ex. 2 at 33; *see also id.* at 12-13, 19-21, 29.)

Third, Plaintiff's argument ignores Michigan law that rejects the "complaining witness" exception.  As described above, a complaining witness is an individual who plays a role in initiating a prosecution.  In Michigan, however, "[a] warrant may not be issued without the prosecutor's written authorization . . . . Thus, in Michigan, the prosecutor's exercise of his independent discretion in initiating and maintaining a prosecution is a complete defense to an action for malicious prosecution." *Matthews v. Blue Cross and Blue Shield of Mich.*, 456 Mich. 365, 384, 572 N.W.2d 603, 613 (1998).  This complete defense cannot be avoided "[u]nless the information furnished was known by the giver to be false and *was the information on which the prosecutor acted . . . .*" *Id.*, 456 Mich. at 385, 572 N.W.2d at 613 (emphasis in original).  In this case, the prosecutor from Plaintiff's criminal trial testified that he did not rely on Defendant's allegedly false statement in deciding to pursue charges against Plaintiff.  Consequently, Defendant is shielded from liability in this case by testimonial immunity and he is entitled to judgment as a matter of law.

Although the Court's holding on this issue is dispositive, Rule 50(c)(1) of the Federal Rules of Civil Procedure provides that, "[i]f the court grants a renewed motion for judgment as a matter of law, it must also conditionally rule on any motion for a new trial by determining whether a new trial should be granted if the judgment is later vacated or reversed."  The Court must therefore continue its analysis of each of the issues raised in Defendant's motion to determine the appropriate resolution should the Sixth Circuit disagree with the Court's analysis above.  As to the issue of testimonial immunity, if the Sixth Circuit

13

disagrees with the Court's holding and finds that Defendant is not immune, there is no need for a new trial as the jury verdict reflects the jury's consideration of Defendant's preliminary examination testimony.  Therefore, Defendant's motion for a new trial on the basis of testimonial immunity is conditionally denied.

## V.  Governmental Immunity

As an alternative ground for judgment as a matter of law, Defendant argues that he is shielded by governmental immunity.  The Court previously rejected this defense when deciding Defendant's pretrial motion to dismiss.  (Sept. 6, 2007, Opinion and Order, Doc. No. 27 at 9-13.)  Having reconsidered the issue, the Court maintains its previous position.

Although Michigan law provides tort immunity for governmental agencies and their employees when engaged in the exercise or discharge of a governmental function, Mich. Comp. Laws § 691.1407, government employees are not shielded under the statute from liability for malicious conduct.  *Odom v. Wayne County*, 482 Mich. 459, 474, 760 N.W.2d 217, 225 (2008).  In this case, Plaintiff's "malicious" prosecution claim, not surprisingly, required proof of "malice," *see Matthews*, 456 Mich. at 378, 572 N.W.2d at 609-10, and the jury necessarily found that Defendant acted with malice when it returned a verdict in Plaintiff's favor.  Therefore, Defendant is not entitled to judgment as a matter of law or a new trial on the basis of governmental immunity.

## VI. Punitive Damages

Defendant next argues that the jury's award of punitive damages must be vacated.[9]  The

---

[9]The jury awarded Plaintiff $150,000.00 in punitive damages.  (Jury Verdict Form, Doc. No. 44.)

14

Michigan Supreme Court has warned that "courts must be mindful of the fact that punitive damages are available in Michigan only when expressly authorized by the Legislature." *Gilbert v. Daimler Chrysler Corp.*, 470 Mich. 479, 465, 685 N.W.2d 391, 400 (2004); *see also Camaj v. S.S. Kresge Co.*, 426 Mich. 281, 289-90, 393 N.W.2d 875, 879 (1986) (taking note of "the longstanding disfavor of punishment-type damages" in Michigan). In response to this argument, Plaintiff failed to identify a statute authorizing punitive damages in malicious prosecution actions. Furthermore, this Court's independent search of Michigan's statutes has failed to reveal any basis for a punitive damages award.

Nonetheless, Plaintiff cites case law in support of his claim for punitive damages. Two of the cases cited by Plaintiff authorize punitive damages for claims brought under 42 U.S.C. § 1983. *See Dorr v. City of Ecorse*, 305 Fed. Appx. 270, 277 (6th Cir. 2008); *Hill v. Marshall*, 962 F.2d 1209, 1217 (6th Cir. 1992). Plaintiff, however, specifically chose to pursue his malicious prosecution claim as a state law tort claim, making these cases irrelevant. The third and final case cited by Plaintiff, *LaLone v. Rashid*, is not relevant to this case. 34 Mich. App. 193 (1971). Although *LaLone* discusses punitive damages in regard to a state law claim for malicious prosecution, that case specifically dealt with damages for malicious prosecution claims brought pursuant to Michigan Compiled Laws § 600.2907. *Id.* Fifteen years after *LaLone*, the Michigan Supreme Court analyzed § 600.2907 and concluded that the statute applies only to claims involving "fraudulently filed 'straw-party' suits"–a specific type of malicious prosecution claim not presently before this Court. *Camaj*, 426 Mich. at 290, 393 N.W.2d at 879-80.

Because § 600.2907 is the only Michigan statute that could arguably support an award

15

of punitive damages for malicious prosecution and because that statute is not relevant to this case, the Court concludes that there is no legal basis for the award of punitive damages made by the jury. And although Defendant failed to object to the jury instruction that authorized the jury to award punitive damages, allowing the award to stand would amount to plain error. *Thompson v. Paasche*, 950 F.2d 306, 314 (6th Cir. 1991). Therefore, in the event that this Court's ruling on the testimonial immunity issue should be reversed, the Court orders that the award of punitive damages be vacated.

## VII. Future Damages

Defendant also argues that "the award for [future] damages is based on speculation, not supported by the evidence and/ or is clearly excessive, requiring the Court to vacate said award or to reduce the award to a reasonable amount to be determined by the Court."[10] (Def.'s Mot. at 14-15.) Beyond this single sentence, Defendant presents no further argument on this point and Plaintiff failed to respond to the issue. At the conclusion of the parties proofs, the Court specifically informed the jury that future damages could be awarded only for elements of damage that Plaintiff is reasonably certain to sustain in the future. The Court also instructed that the jurors were to decide which elements of future damage had been proven by consideration of the evidence, not upon speculation, sympathy, guess, or conjecture. Given these instructions and Defendant's failure to present any evidence that the jury's verdict was actually based on speculation, the Court conditionally denies Defendant's request that the award of future damages be vacated or reduced.

---

[10]The jury awarded Plaintiff a total of $100,000.00 in future damages consisting of $5,000.00 a year for twenty years. (Jury Verdict Form, Doc. No. 44.)

## VIII. Jury Instructions

In the "prologue" of his motion, Defendant makes several vague complaints about the jury instructions working against him "unfairly." (Def.'s Mot. ¶¶ 18-23.) As to these issues, Defendant concludes, "There were other concerns discussed regarding the propriety of the jury instruction. They are discussed in more detail in the trial transcripts, which will be forwarded to the Court, Monday[.]" (*Id.* ¶ 23.) Beyond these averments, Defendant presents no further arguments regarding the jury instructions. Without an explanation or legal argument as to why or how the jury instructions worked unfairly against Defendant, the Court conditionally denies Defendant's motion for new trial on this ground.

## IX. Collateral Estoppel

Also in the prologue of his motion, Defendant mentions the doctrine of collateral estoppel. (Def.'s Mot. ¶ 12.) It is unclear if Defendant intended to raise this as an issue or was merely observing that the argument had previously been made and rejected by the Court. In either case, Defendant is not entitled to relief on this issue for the reasons set forth in this Court's September 6, 2007, Opinion and Order. (Doc. No. 27 at 13-15.) Therefore, Defendant's motion for judgment as a matter of law or, in the alternative, for a new trial is conditionally denied as to this issue.

## X. Conclusion

This case is properly before the Court based on Plaintiff's 42 U.S.C. § 1983 claim against the City of Detroit and, in the interest of judicial economy, the Court declines Defendant's invitation to dismiss Plaintiff's pendant state law claims at this stage in the litigation. In regard to Defendant's motion for judgment as a matter of law, the Court

17

concludes that the jury's verdict must be vacated.  The sole basis for the jury's verdict on the malicious prosecution claim was Defendant's prior testimony at a state court preliminary examination.  Because such conduct is shielded from civil liability under Michigan law by testimonial immunity, judgment must be entered for Defendant.

If this holding is later reversed, the Court conditionally concludes that Defendant has failed to set forth arguments sufficient to establish the need for a new trial.  Defendant is not protected by governmental immunity, he has failed to establish reversible error in the jury instructions, the jury's verdict is not barred by collateral estoppel, and Defendant failed to show that the jury's award of future damages was based on speculation.  However, Defendant has successfully argued that the jury's award of punitive damages is not supported by Michigan law and must be vacated.

Accordingly,

**IT IS ORDERED** that Defendant's motion for judgment as a matter of law on grounds that the Court lacks subject-matter jurisdiction is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's motion for judgment as a matter of law on the basis of testimonial immunity is **GRANTED**.

**IT IS CONDITIONALLY ORDERED** that Defendant's motion for new trial on the basis of testimonial immunity is **DENIED**.

**IT IS FURTHER CONDITIONALLY ORDERED** that Defendant's motion for judgment as a matter of law or, in the alternative, for new trial on the grounds of governmental immunity, collateral estoppel, erroneous jury instructions, and wrongful future

18

2:06-cv-11073-PJD-RSW   Doc # 58   Filed 04/23/09   Pg 19 of 19   Pg ID 767

damages is **DENIED**.

**IT IS FURTHER CONDITIONALLY ORDERED** that Defendant's motion for

judgment as a matter of law as to punitive damages is **GRANTED**.

A judgment consistent with this order shall issue.

s/PATRICK J. DUGGAN
UNITED STATES DISTRICT JUDGE

Copies to:
Richard G. Convertino, Esq.
Jacob Schwarzberg, Esq.